two cases on for argument this Friday. First up is 25-4048 United States v. Scott, and we have the honor of having the federal defender with us this morning, Mr. Kamens, whenever you're ready. Thank you, Chief Judge Diaz. May it please the court, when Raquan Scott was 16 years old, he was convicted of Virginia's use of a firearm during commission of a robbery offense in violation of Virginia Code 18.2-53.1. This statute is not a crime of violence for three reasons. First, the statute requires no substantive connection between firearm use and the predicate offense. Second, the statute does not require that firearm use be directed against another person. Third, the statute does not contain an intent requirement as to firearm use greater than recklessness, particularly with respect to accessories like Mr. Scott. The categorical approach requires the court to identify the least culpable conduct that is criminalized by the statute. It essentially asks the court to answer two questions. First, does that least culpable, oh, I'm sorry. I'm sorry. You've said the statute multiple times now, and I think it's critically important for my following your argument that I understand what you mean when you say the statute. Because this statute, the statute we're talking about is the use of the firearm statute. But I think it's common ground that in this case, that statute is divisible, one. And two, that in order to be guilty of violating that statute, the government also has to prove that you committed one of the predicate offenses. So when you say this statute, do you mean the use of a firearm statute? Or do you mean the use of a firearm statute in a basis in which the predicate offense was a robbery? So, yes, I'm talking about the- No, no, that was an either or. When you say this statute, do you mean either use of a firearm simpliciter or use of a firearm when the charged offense was use of a firearm during the commission of a robbery? I mean during the commission of a robbery. So it includes a list of enumerated offenses. Well, so tangibly, it includes, when we talk about what the elements of that statute are, the elements of that statute include both the elements of that statute, but they also include all the elements of a robbery. Correct. Whatever enumerated offense is at issue in the case. And in this case, we're not contesting that Mr. Scott was convicted of some other predicate or that the statute isn't divisible with respect to the enumerated predicates. We are focused on the conviction in this case of 18.2-53.1, limited to the predicate offense of robbery. So just tangibly, to give one of your three points was that there's no mens rea requirement. When you say this statute doesn't have a mens rea requirement, what you mean is this statute doesn't have a mens rea requirement even or a qualifying mens rea requirement, even when the predicate offense is robbery. Fair point. Absolutely, robbery has a mens rea requirement. We are talking about a mens rea requirement with respect to the firearm element because I think that, you know, clearly common law robbery requires the intention of private property. There's clearly mens rea, but what we're talking about is whether the elements established in 18.2-53.1 independently require an intent to use force against another person. While I don't think you need to look at it independently, I think the better approach would be to combine the elements of the two statutes and see what you have. And what you have is the use of a firearm while taking property from another by violence or intimidation. Use of a firearm, because those are the elements of the robbery, and it seems to me the use of the firearm, use itself may have, you know, under Gordon, use is a pretty, it's an active word. It means not just having it, it means using it. And the Supreme Court has suggested that there is intent in that apart from the normal mens rea of criminal statutes. But then you have the criminal statute, he has to be using the firearm while stealing property from another by intimidation and force. That firearm adds an element of violence, doesn't it, to either intimidation or force. So no, and the reason, Judge Niemeyer, is that the use of the firearm does not have to be connected to the threat or intimidation. I'm not suggesting it's connected. I know the statute on that. What it says is during the commission, while committing, and that court has said the same, it means during the commission. So while committing robbery. So if you have a larceny that develops into robbery, and you have a gun during the larceny phase, that doesn't satisfy it, because it doesn't say using a gun while committing larceny. It says using gun while committing robbery. And, of course, while committing robbery has the necessary elements of force or intimidation. I'm missing something, I guess, but it seems to me that falls right in what we've done in other courts. I mean, we've looked at robbery with a gun in other states, and the only thing that has preserved robbery in Virginia from categorical crime of violence is the intimidation created by threatened defamation, sodomy, threatening sodomy. The other states don't have that, but Maryland and I think North Carolina, we've said those are crimes of violence. So here, you may still have the intimidation by threat of sodomy, but you also have use of a firearm during the commission of that crime. And I'm missing something, I guess, but maybe you can straighten me out. Yes, Judge Niemeyer, let me say where we part ways. The way that you've just construed the statute is that the firearm must be used during the commission of all of the elements of the predicate offense, and that's simply not... Well, if you're lacking force or intimidation, you don't have robbery. Correct. It's just larceny. Correct. And so you have to have it. So when you say during the commission of robbery, you have to have those additional elements in there in order to make it robbery. Correct. But robbery can be broken down into, let's say, three periods. First, the larceny. Second, the force or intimidation against the and third, aspiratation. The use of the firearm can certainly occur during any of that. It's a continuous offense, so it can occur during the larceny. Except it doesn't work. It doesn't work because if you have the use of the firearm during the theft, that is not robbery. And what could happen in a larceny is you could be in a store with a gun, stealing stuff, and leave with it. That's not robbery. It becomes robbery when the owner comes in and you confront the owner. And so the statute clearly anticipates that the owner has to be there. Correct. But it doesn't anticipate or require that the firearm be used to exert force or intimidation against the victim. So the firearm... Mr. Clemens, can I... Sorry to interrupt you. So I guess the example that you might be getting to, and I apologize if I'm preempting you, is that very same example, the assailant could threaten the store owner with defamation or sodomy, even though he's armed, commit the robbery, and have the firearm during the aspiratation, right? That's... Absolutely, and threaten self-harm at that point or use the firearm to open up a lockbox and in effect the taking, then threaten reputational harm against the victim, and then engage in aspiratation. If the cops show up and the assailant threatens to harm himself, if they won't let him go, that would satisfy the text and the case law. So the case law... Is this Virginia Court of Appeals opinion that's wildly ambiguous about who exactly is threatening who? Well, I don't want to overstate it. It's an unpublished Court of Appeals opinion, but it does point to a couple of things. One, the statutory neighbor, 18.2-53, which contains the element of force against another person. So that is explicit in the immediately neighboring statute. We also have a Virginia Supreme Court opinion in Wright versus Commonwealth, which addressed the construction of the sister statute, firearm use, possession, or threat during commission or while committing a drug offense. And in that case, Wright versus Commonwealth, which the government doesn't respond to, the court said that there is no substantive nexus required between firearm use and the predicate drug offense, because this is very different than the offense in the federal law that you're very familiar with, 18 U.S.C. 924c, which requires not only a durational or temporal connection between the firearm, it also requires a substantive connection during and in relation to or in furtherance of the predicate offense. Can I continue to refine this hypo? Let's put self-harm on the table, because I'm not at all sure that I'm convinced of your argument that you can violate the statute by threatening self-harm. But let's do the use, threaten the store owner by accusing him of committing the offense of sodomy, the common law offense of sodomy, and that in the course of leaving or aspiratation, you somehow use the firearm. Now, in order for that to work here, right, am I right, you have to, not just that you have to use the firearm in the course of aspiratation, you have to use the firearm during aspiratation in a way that is not threatening to the victim of the robbery, because once it's threatening to the victim of the robbery, you've threatened the victim of the robbery during the commission of the robbery. So I have to use the firearm during the aspiratation in a way that the victim would not perceive as threatening to the victim? Correct. And I think, you know, here's an example from Keist, the Ninth Circuit case, which is propping open a window. So for example, you engage in a threat of reputational harm during aspiratation, you open up a window and use the gun to prop it open. There is nothing that requires the use of this firearm. But can I, isn't the, I mean, bracketing how it meets the elements, the problem I see with that is, if I was a prosecutor, I would argue the minute the victim of the robbery is shown a gun that the assailant is holding, that is a threat to the, that is something that any reasonable victim would understand as a threat, right? There's the classic, you know, you've seen Westerns, right? The whole point is to threaten someone with a gun, in some ways, all you have to do is draw their attention to the fact that you have a gun and that's a threat. Absolutely. And Judge Heitens, what you're referring to is the implicit threat essentially from if the victim were to see a weapon, but it's very clear under Virginia case law, they don't need to see it. And so you're, we're talking about the least culpable conduct. Certainly there are cases where a victim could see the weapon and be afraid, but that's not what's required by the statute. They don't need to see it at all. And Virginia case law is very clear that there's a kidnapping case where the victim is a baby and the defendant argued, hey, this victim never even knew I had a gun. And the court said, no, that's not a requirement of the statute. There's nothing that requires a victim to see the weapon or, and there are cases also. How do you detach the weapon from the use of violence or intimidation? In other words, that's an element and the gun has to be used during that. That's what makes it robbery. If you don't have violence, taking away by violence or, or intimidation, you don't have robbery. Now you can have them taking away innocently or without violence and later have the gun, but then you're not using it while committing the robbery. It's because the parties agree that the offense of robbery is a continuous offense. So if you break it down into time periods, I understand it doesn't matter how long that means you have to be using the gun during, it doesn't say for one second. I mean, we're talking about the necessary elements to make it robbery. It just meant take my hypothetical. If you're right, then all you need to do is the gun during the larceny phase and then toss the gun out the window or hide it, throw it away, and the owner comes in and you run away with the thing. The notion, the court has said, for instance, using a gun, this is the Virginia court. If you use the gun after you're leaving, while you're exporting, that's not part of the robbery. And so that's a Williams case or whatever. And let me find that case. But the idea is that use is an active verb and you're using a gun. And if you look at Borden, they've spent a lot of time talking about what use means. And when you use a gun during the commission of a robbery, you have to have sufficient elements to commit a robbery. And if you try to fragment it over a period of time, days or whatever, I don't know. It seems to me you don't have the elements satisfied. Judge DeMeyer, let me put it this way. If Virginia law required the use of the firearm during the entire duration of the robbery, we'd be in agreement. We wouldn't have an argument here, but that's not what Virginia law requires. So in your hypothetical, if a defendant uses a firearm to initiate the larceny, to obtain money from a lockbox, for example, and then throws the gun away, then is confronted by the store owner and makes a reputational threat to commit. He didn't use the gun during the robbery. He used the gun during the larceny. The larceny is part of the robbery. It's part of the elements. Case law is very clear that it is part of the robbery, Judge DeMeyer. Sure, it's part, but it's not a necessary, sufficient part. There's no robbery. He used the gun during larceny. He did not use the gun during robbery. To commit robbery, you have to go further. You have to take it away from somebody by force or intimidation. And if you used a gun during that thing, I can't understand why that doesn't fit. In other words, the only reason Virginia robbery is not a crime of violence under our precedence is the use of the threat of sodomy, defamation, threatening sodomy. And when you put the gun in, regardless of whether sodomy is present, you now change Virginia robbery to fit armed robbery in almost every state that we've found the use of a gun during the commission of a robbery to be a crime of violence. May I answer? Sure. Well, I'll talk to the Chief. Chief Judge Diaz. Yes, please. So, Judge DeMeyer, respectfully, you're adding an element of a requirement that the firearm be used to affect force or intimidation on the victim. And that's not required by the text or the Virginia case law. It merely needs to be used during the duration of the robbery, which includes the larceny portion. It includes the violence and intimidation portion. It includes the aspartation. If firearm use at any point during the robbery is used for any reason, even unrelated to the predicate offense, to scratch your head, that's a use. That is sufficient to satisfy the elements. And what is the case that says that, makes that point of law? So, there are two. Rose is a court of appeals opinion that cites the U.S. Supreme Court case Bailey about use. And in a case called Smith versus United States, I think it's Justice Scalia in dissent with the majority has a debate about what's a use. And they say, well, even scratching your head could be a use. But in 924 C, which is the statute they were talking about, that wouldn't be sufficient to violate the statute because scratching your head doesn't have any relation to the predicate offense under 924 C. The reason I ask that is because it's clear, obviously, under Virginia law that making an accusation of sodomy is enough to warrant something less than the generic definition of the federal offense of robbery. But we also have cases that say that it's got to be more than a theoretical possibility of an offense being committed in the way that a defendant would like to have it described. So, aren't we getting a little bit far afield now and getting into theory as opposed to practicality? So, I think the question for the court is, have the Virginia courts either from the plain language of the statute or from their case law greenlit a prosecution that is broader than the force clause? And that's clear here. There is nothing in this statute that requires use of a firearm against another person. And certainly in the context of this case with an accomplice who isn't even required under Virginia law to know that a confederate has a gun with advanced knowledge, there is nothing in this statute to establish either the mens rea or the use of force against another person. Can I just ask you one final question before you can think about the case I was thinking about? It's not Williams, it's Rowland. Rowland versus Commonwealth. And in Rowland, the Virginia Supreme Court said that it was insufficient to support a conviction for use of a firearm in the commission of burglary when the elements of the burglary were completed before the use or display of the firearm. So, it focused on all the elements of the burglary in assessing the use of the firearm and requires the use of the firearm during the elements that constitute a burglary. And if it was used before or after, under this case, they keep focusing on while committing, they say during, and it says it doesn't include the acts that do not constitute elements. And so, I suggest that you have to have sufficient elements committed to satisfy the burglary requirement when it says while committing burglary. And it seems to me that's a pretty logical opinion too, isn't it? You can think about it when you come back. I don't want to drag it out. Chief, can I respond briefly about... Rowland. Sure, go ahead. Rowland is a burglary case, which is completed as soon as a person makes an unlawful entry with intent to commit a felony, and then it's done. It is not like robbery, which is a continuous offense that starts with the larceny and ends with the aspiration. So, burglary is very different from robbery. And secondly, Rowland said, if the person used a gun to affect entry during the burglary, that would have satisfied 18.2-53.1, meaning you could affect the entry by using a gun against property. Yeah, but see, the important thing is they focused on the elements, not on the factual difference between burglary and robbery. The fact is you need to satisfy the elements of the predicate crime or the incorporated crime. And in our case, we have robbery. In that case, you have burglary. But the important point of that opinion is that the possession of a fire, use of a firearm during the commission of burglary or robbery means you have to be during the elements that make it burglary or robbery. If I may, the burglary ended as soon as the person affected entry, and that's when they pulled out a gun. And so, in that case, they said, burglary's over. You used a gun afterwards. It wasn't used during the burglary. So, in the robbery context, it starts with larceny, ends with aspartation. And so, at any point during that time, use a gun, it satisfies the statute. Burglary's a very different offense, and Roland is a good case for us, actually. All right. Thank you, Mr. Kamens. Thank you. Ms. Bechara. Good morning, and may it please the Court. Jacqueline Bechara for the United States. I can start, as my colleague did, with the mens rea question. As Mr. Kamens recognized, the predicate felony here, robbery, requires knowledge as to the actus reus that's clear from the Supreme Court's decision in Carter. Relying on Carter, this Court has consistently held with respect to federal and state robbery offenses that the requisite mens rea is something than recklessness and therefore satisfies the force clause. That's true, beginning with McNeil, Docter, Burns, Johnson, Salmon, and as recently as Shanton. So, my friend never explains how the addition of the use of a firearm element to the underlying felony of robbery, which by necessity requires a sufficiently heightened mens rea, adding the use of a firearm somehow takes the compound offense outside of the force clause. It just doesn't make sense. Instead, this Court, in other cases, like Bryant and Thomas, recognizes that the addition of a weapons element actually confirms that an offense satisfies the force clause. So, necessarily, and Judge Niemeyer, you are correct that the categorical approach requires the Court to assess the elements of the offense as a whole, not to piece them out individually. That's true, you know, from cases like Allred, Runyon, and Roof. The Court has consistently said that the Court is going to look at the elements of the offense as a whole in determining whether there's a sufficiently heightened mens rea. The Court should do the same here and hold that the compound offense necessarily satisfies Borden. So, let me give you a hypo about the compound offense that I think satisfies all the elements of this offense, and let me ask you if you think either, A, it doesn't satisfy the elements of the combined offense, or you think this isn't a problem. So, the hypo is I want to rob someone in their house, and in the course of doing that, I need to get into their house. I mean, I know that's a burglary, but I'm just going to represent, I'm going to commit a robbery here. And so, what I do is I get into their house, and I worry that door is going to close behind me. So, I use a firearm to prop open the door as I go in, to make sure that I have a way of getting out after I rob them. So, I go in through the front door. I use my gun to prop open the door. I then go into the victim's kitchen, and I say, give me all of your stuff, or I will tell the world that you are a person who's committed the crime against nature. They then give me all their stuff. I then leave it, and then I come back to my firearm, which I very carefully left in the place to facilitate my escape. I pick up the firearm, and I walk out. Do you think that person has committed every element of the combined offense under Virginia law? No, Your Honor. I don't think that that qualifies as a use of a firearm within the scope of 18.2-53.1 for a few reasons. First of all, Rose v. Commonwealth says that the use must be, quote, intended to cause physical injury. The Court of Appeals there was relying on the 18.2-53.1 is aimed at preventing actual physical injury or death and to discourage criminal conduct that produces fear of physical harm. We know the Supreme Court of Virginia in cases like Yarborough has also said that this statute, 53.1, because it's a penal statute, the courts will always construe it narrowly. When there's any doubt about its potential scope, it's going to be construed against the Commonwealth and in favor of the accused. I would submit that that includes as to what constitutes a use. And broadly, when courts are construing the meaning of use, the Supreme Court, as early as Bailey and as recently as Dubin, in interpreting what use means, has applied the canon of nos quere socis, right? A word is known by the company it keeps. But here we're not interpreting a federal statute, so I'm not sure why how the Supreme Court construes federal criminal statutes necessarily tells me how the Supreme Court of Virginia construes Virginia statutes. That's a fair point, Your Honor. However, the Virginia courts have looked to the Supreme Court's decisions in Bailey and Smith in interpreting what use might mean. And so, I don't think that nos quere socis is sort of like limited to interpreting federal statutes. That's a general canon of statutory interpretation. And here, use or attempted use is paired with display in a threatening manner. And so, our position is that they must be construed consistently, right? Use is circumscribed to something that is similar or akin to displaying a firearm to the owner of property in a threatening manner, at least when we're talking about the compound offense of robbery. Can I just ask you one close-off question on that hypo? Thank you. That was all very helpful. So, your argument, as I understand it, is that hypo doesn't violate this statute. That's broadly the response. And so, counterfactually, and again, you're not going to concede that. I understand your primary submission is that hypo does not violate this statute. If we were to conclude that that hypo violates this statute, would you have a categorical match? All right. So, if we're talking about Borden, I think that... No, no, no. I'm not talking about Borden. I'm saying that the hypo I gave you involving propping the door open, all of that, and let's say, hypothetically, we certified at the Supreme Court of Virginia and said, does that violate this statute? Has a defendant who did that violated this statute? Have they used a firearm during the commission of a robbery? If the Supreme Court of Virginia said the answer to that question is yes, would there still be a categorical match in the government suit? I think no. If the firearm is propping open the door and the owner of the property... ...never sees it? No. Okay. I thought so. I just wanted to clarify. So, Ms. Becerra, what is it that Mr. Kamens is getting wrong about his notion that because robbery is a continuous offense, that the use of the firearm can occur at any point in that continuum? So, if we look at the continuing offense cases, the point that they're actually making is a distinction, as I think Judge Niemeyer was getting at, between larceny and robbery in that basically the asportation might not occur until the owner of the property or someone in constructive possession of the property has been fully severed of absolute control and possession of the property, right? And so the distinction I think that's important is that, yes, a person can take an item from someone's person or presence, perhaps in a way that doesn't necessarily, as Mr. Kamens posits, it might not be at that moment that the person uses force. But all of the cases that are cited in the briefs, at the moment where someone confronts the person who is trying to take away the property, the person uses either violence or intimidation to affect absolute control over the property. And that is the moment when the courts consistently use the phrase, it matures into robbery. It is not robbery until there has been this use of force or intimidation to affect absolute control over the property from the owner or someone in constructive possession. And so your point is that even if someone commits that offense by threatening slander or reputational harm via an allegation of sodomy, that because the firearm hasn't yet been used in that instance, it doesn't satisfy the requirements of the Virginia statute. Right. So if the hypothetical person approaches the owner of property and makes a threat of a uses a firearm kind of to say, no, really, I'm not giving this back to you. That's when the robbery, the asportation is complete when it has matured into a robbery and not just larceny. Right. The use of the firearm is kind of the critical distinguishing feature. I think Judge Niemeyer was pointing out that the only reason that Virginia robbery has been held to fall outside the force clause is because of this potential sodomy threat theory. But once you add the there's just no conceivable way to commit this offense in a way that doesn't require a use attempted use or threatened use of force. And you're correct, Chief Judge Diaz, to note that the realistic probability test from Duenas-Alvarez continues to have force here. The defense has never identified any case, not even dicta in any case, where a Virginia court has recognized that a defendant could be convicted under 18.2-53.1, but based on a sodomy threat theory of robbery. So can I ask you, bracketing for the sake of bracketing that I'm fully aware that under the categorical approach, we don't look at the specifics of his offense. This is more of for a possible assumed harmlessness error issue. Do you agree that the district court was just wrong when it said that Mr. Scott used a gun during his previous offense? Yes, Your Honor. And I would note that my colleague affirmatively corrected the district court and pointed him to the facts recounted in the PSR to make clear that the defendant was not the person personally the one who was holding the gun during the predicate offense. And so to the extent for purposes of an alternative variant sentence, the district court cited that he was using a gun. That's a wrong factual premise, right? That is incorrect. Yes. Of course, we have made a harmlessness argument here for the reasons we asserted in our brief. Well, the district court made clear that it would have imposed the same sentence regardless. And for the reasons we asserted in our brief, it would be substantively reasonable. The defendant has never really engaged. Is that enough? I understand. So the problem is I've looked at our cases and we say two different things. We say that the alternate sentence has to be reasonable. And then sometimes we say it has to be substantively reasonable. And I will bracket that you can cite cases that say substantive reasonable. And I'd ask you to bracket that I can cite cases that just say reasonable. Why wouldn't it also have to be procedurally reasonable? Because I've been thinking through this, right? Like we say just take a step back outside of alternate variant sentences. All sentences have to be procedurally and substantively reasonable. Gall says that. Rita says that. All kinds of cases say that, right? And so then sometimes the district court imposes what it thinks is a procedurally reasonable sentence. And then they recognize that, look, there's appellate review and we say a lot of weird things about the ACCA. I still don't understand how we said what we said in PARM, but here we are. So the district court says even if I got something wrong, I'd still do the same thing. It doesn't seem to make sense to me that it's just enough to ask whether that same thing would be substantively reasonable. Why wouldn't that same thing also have to be procedurally reasonable too? Well, because, Your Honor, the premise, I guess, of this assumed error harmlessness inquiry is that there is a procedural error to begin with. There's no counterfactual. Well, no, but here's the counterfactual. Here the district court said I've concluded this enhancement applies. And having concluded this enhancement applies, I'm giving a within guideline sentence. And then, but the counterfactual is what if I'm wrong that this enhanced sentence applies? Well, then the district court has to explain why it's imposing an above guideline sentence to be procedurally reasonable. I just don't understand how you can get around, like, if you commit one procedural reasonableness violation, that's no big deal as long as you commit another unexplained sentence and that would be substantively reasonable. That just doesn't make any sense to me. And the reason I say all this matters, I'll just, I won't stop, I won't hide the ball. Like, I don't understand how this alternate sentence would be procedurally reasonable because if I assume the district court got the enhancement wrong, I don't know what its explanation of imposing an above guideline sentence is other than just saying I would do this. Okay, I think the distinction that I'm making or that I see is that if we assume that the district court erred in calculating the guidelines range, you still have as a point of comparison what the guidelines range would have been, for example, had the enhancement not applied. And so you can compare the sentence actually imposed to the counterfactual other guidelines range and assess, okay, is this substantively reasonable? But without a new calculation of the guidelines, there's just, there's no, there's no, not a new calculation of the guidelines. I need an explanation from the district court. If this were an above guideline sentence, I would impose an above guideline sentence because, right? Why would I impose an above guideline sentence? And all I really have here is the district court saying it would do it and also seemingly getting the facts of the defendant's case wrong. And so now I have real concerns about whether that alternate variant sentence, again, this all presupposes that you're wrong on issue one. And I know your threshold you're not wrong on issue one, but if we're having the harmless error inquiry, we're positing that you're wrong on issue one. And if that's true, I don't understand what the district court's explanation for imposing above guideline sentences. Didn't the district court refer to the man's criminal history and a similar type of dangerousness to justify the sentence as a variant sentence? That's correct, Judge Niemeyer. The district court also repeatedly This is where the district court got the defendant's criminal history wrong? I mean, it's not the history that's wrong. It's just the facts of the underlying offense the district court seemed to misremember. But I would add that multiple times during the sentencing hearing, the district court emphasized the fact that the defendant committed this firearm offense just three months after he had been released from state prison for serving 16 years in total for the robbery and use of a firearm offenses, as well as the offenses that he committed while he was in the Department of Corrections. And so that was a driving force behind the district court's reasoning. Can I follow up on Judge Hyten's point and Judge Niemeyer's response? I too was concerned about, well, initially I thought that there might be a basis for affirming based on harmlessness. But when I went back to look at the sentencing proceeding in this case, in addition to the issue that Judge Hyten's presented, it seemed to me that when the time came to announce the sentence, all the court did was simply recite the existence of the guidelines, but didn't apply the relevant facts to those guidelines. It just seems to me to be procedurally deficient on its face, even absent, you know, anything else going on in this case. So just to take a step back, I would remind the court the defendant is not actually raising a separate claim. I understand that, but this is in response to the government's claim that the sentence is harmless and to Judge maybe both. And if you look at page 109 of the transcript, I mean, it's two paragraphs, it's just a recitation that the sentencing guidelines were properly computed and I'm considering them to be advisory. And along with the factors set forth in section 3553, this is the sentence that I'm going to impose. That's it. I mean, that by itself seems to be on its own, had an argument been raised, even though this is a guidelines sentence. But then when you layer on top of that, now, if we agree with Mr. Kamen's on the first point, and I know you have pretty good arguments as to why that's not correct. Now you've got an above guideline sentence and virtually no explanation. So I think I understand the court to be focused on the moment when the district court actually announced its sentence. But if you go back earlier in the transcript, the district court pretty carefully walked through the 3553A factors going essentially through the PSR and recounting obviously the nature and circumstances of the offense, the defendant's criminal history or his history and circumstances recognizing. And so this court when evaluating procedural reasonableness doesn't look only at the moment that the sentence is imposed in isolation. The court considers the sentencing transcript as a whole in assessing the district court's analysis. Now, are you saying that the district court did all that or the prosecutor did all that? Because I mean, I read the transcript, didn't seem to me like the judge said much of anything, but maybe I'm missing that. My recollection is that the district court did assess at least the basic parameters, the 3553A factors before it actually imposed the sentence. Oh, okay. I see what you're saying. And I gather that you're saying there wasn't a sufficient kind of like reference back to those factors before it actually imposed the sentence, but that's not what this court's procedural reasonableness cases require. But the court did say, it says based upon the record at hand, including your criminal history. And it seems to me the record at hand is the record they've just been talking about, isn't it? Yes, that's correct, Your Honor. I'm not hearing other questions on the merits. I just wanted to with respect ask that the court reach the merits and not just dispose of this case on homelessness. So can I give you another hypo then? This doesn't involve individual facts. This is a state law prosecution where the following happens. So again, for the sake of argument, imagine this highly unorthodox, strange proceeding. Imagine a case in Virginia State Court where at the beginning of the trial, the judge says, members of the jury, the parties have stipulated two things that I'd like to stipulate to. It is stipulated in this case that this defendant committed a robbery in violation of Virginia law. The defendant stipulates he committed a robbery in violation of Virginia law. And the parties also stipulate that during that offense, the defendant used a firearm. It is stipulated to that. And the defendant is thus convicted because I think at that point, the defendant has stipulated to every element of the combined offense under Virginia law. At that point, does this enhancement apply? Those are the only stipulations. The guidelines enhancement? Yeah. You know nothing about the facts of the defense in this case. It is stipulated that those things are all true. Your view is yes, right? I think. Yes, because that's the nature of the categorical approach. The court focuses on the elements of the prior conviction, not the facts. And when the defendant says the enhancement doesn't apply because how do you know that I used it against the person of another? What does the government say? And by the way, there's no stipulation. How do we know that? I mean, I guess it's just because inherently there's no way to not do that. I just want to understand that there's literally no way to do that in your view without having also triggered the enhancement with the guidelines. Correct. So my understanding of the defendant's arguments is that use is sort of this broad, all-encompassing term that could hypothetically on some set of facts involve a use that is not actually accomplishing some kind of threat or intimidation of the victim. And our position is that that is not a way, Virginia case law does not support that interpretation of the word use. And so categorically to violate this compound offense, there must have been a use, attempted use, or threatened use of force. The facts of a particular case are irrelevant under the categorical approach. Ms. Bechara, before you sit down, there was a case that was cited by Mr. Kamen's Wright v. Commonwealth where he asserts that that case holds that there doesn't need to be any nexus between the firearm and the predicate offense. And I don't know that you addressed that case in your response. Is there anything you'd like to say about that or why his view of that case is wrong or why it doesn't apply in this case? I can address that briefly. I see I'm over my time. Please. Okay. So Wright was actually interpreting a different statute. It's 308.4 paragraph C, which is similar to 924 C, but it's limited to predicate drug crimes. And the distinction I would make there is that that offense also applies to possession, mere possession of a weapon. But the Virginia's case law is clear that 53.1 does not apply to mere possession. There must be a use or attempted use or display in a threatening manner. I think Judge Niemeyer was correct in my friend's opening to say that use connotes some kind of active employment. And so the use, while in the commission of the robbery, even if there is no, the statutory language doesn't contain the words like during and in relation to or in furtherance of, that is not dispositive of the issue here because in order for someone to actively employ a firearm while committing robbery, there's necessarily some kind of force or attempted or threatened force. All right. Thank you. Do my colleagues have any other questions? No. All right. Thank you very much, Ms. Potero. Mr. Kamens? I think you're on mute. Can you hear me? Let me start where my friend ended with the definition of use. Rose v. Commonwealth is the leading case in Virginia, and it says that Virginia courts are obligated to give use its ordinary and plain meaning, and it cites Webster's, which defines use as to employ for some purpose to put into service. It also cites Bailey, which says the active employment understanding of use certainly includes brandishing, displaying, bartering, striking, and most obviously firing or attempting to fire a firearm. So Judge Hayton's hypothetical of propping open a door. Okay, but what about this language and what about the sentence from Rose that I'm sure you're familiar with because the government quotes it. Once the object satisfies the definition of the firearm, any use of the firearm that is intended to cause physical injury is a violation. Now, I understand that's a case in which the defendant used the weapon as a club. And so I guess do you read? I think the government is suggesting that that sentence means only if it is used in a manner that's intended to cause physical injury. Am I correct that your view would be all Rose was doing was rejecting the defendant's argument in that case and because that defendant had clearly used it as a weapon, the court just says, like, use it as a weapon. Go away. That constitutes use. Absolutely. And that's exactly how the analysis goes. They say this term use is incredibly broad. It says use for any purpose and certainly use of a firearm that's intended to cause physical injury that necessarily falls within the bucket of things that constitute uses. And so it doesn't mean that all of the ways that you use a firearm necessarily have to be intended to cause physical injury. It just means that is certainly among all of the ways that you can use a firearm. That's probably the most common way, but it's not the only. And that's why Virginia courts say use is anything. And your hypothetical Judge Heitens is exactly correct that propping open a door or window is just as much of a use as firing into the air or into the ground or against a victim. All of those are uses. Not all of those are uses against a victim to intimidate or use force. Secondly, with respect to mens rea. The case is, before you get to mens rea, can you talk about, you cited a Supreme Court case named Ressam and you said that it supports your view, Ressam, that the Virginia statute is broader than the generic offense in the federal statute. And the reason, but in that case, the provision, and I'm going to quote it, prohibited the carrying of an explosive during the commission of any felony. Carrying, to me, does not connote the same kind of active action that use does. So, why is that case at all helpful here? So, Ressam is just like Wright. It's the federal version of Wright. It's construing 18 U.S.C. 844H. And that's unlike 924C. It doesn't require any substantive nexus between the explosive in that case and the use or carrying. And so, it's just like Wright versus Commonwealth. Now, my friend said Wright is different because that statute, 18.2-308.4C, includes possession. But in Wright, it said, look, none of the verbs in the statute necessarily require a substantive connection with the predicate offense. And the same analysis is used in Ressam that, again, the government, I think the defendant in that case, actually, Mr. Ressam, was arguing, look, my predicate offense here is obstruction and the carrying of the explosive had nothing to do with my commission of the obstruction offense. And I think it's an opinion by Justice Stevens who says the statute doesn't require it. It doesn't say during and in relation to that it, just like Wright, cites 924C and says this is not like 924C, which requires a substantive nexus between the use or carrying of a firearm and the predicate offense. So our statute, 18.2-53.1, is just like the federal statute, 18 U.S.C. 844H, and like the sister statute involving a firearm and a drug predicate under Virginia law. So the fact that there's another verb in the sister statute under Virginia law, which, by the way, I think we cited at the Virginia practice commentary on jury instruction, says these are analogous statutes, 18.2-53.1 and 308.4C. They're just mirrored components that are contained in one statute in the federal statute, 924C. So the reason that Ressam is helpful is because it's like Wright. It shows that when you just have a temporal relationship between the firearm and the predicate offense, that doesn't require you to use the firearm in connection with the federal offense. Quickly on mens rea, if I can give an example. If two people agree to steal from a church leader and they go in to the church leader and they say, hey, we're going to tell the entire church that you're engaging in crimes against nature unless you the donation plate. And then one confederate, unbeknownst to the other, pulls out a gun. There's no mens rea required to hold them both accountable, both for robbery and for 18.2-53.1. Unlike federal law, Virginia law doesn't require the defendant who doesn't know about the gun to know about the gun or to have some foreknowledge or intent. So just to be clear, Virginia law is from federal law in that respect and doesn't require any mens rea with respect to the firearm element for accomplices. Can I, my time is over, but I'd like to say a word about harmlessness. Very quickly. Okay, quickly. The way I understand the harmlessness inquiry, it goes back to this court's decision in Saviglione Matute, which is cited in the government's brief. And I think it requires judges to create a record saying, let's say I'm wrong on the guidelines. Let's assume the guidelines are as the defendant says it. Here's why the record supports the upward variance that would be imposed. In this case, I think as you've recognized, the district court got the facts wrong and didn't provide anything on the record to establish why the guidelines should be doubled essentially in this case. We'd ask the court to vacate and remand for reasons. Okay. Well, thank you both very much for your able arguments this morning. I think they were both quite helpful to us in this tricky statutory maze that is the categorical and modified categorical approach. You're welcome.
judges: Albert Diaz, Paul V. Niemeyer, Toby J. Heytens